UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **PERFORMANCE CONTRACTORS,<br> INC., ET AL** | **CIVIL ACTION** |
| **VERSUS** | |
| **JOHN SCHWAB and UNDERWRITERS<br>AT LLOYD'S, LONDON** | **NO. 09-1053-C-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, February 10, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **PERFORMANCE CONTRACTORS, INC., ET AL** | **CIVIL ACTION** |
| **VERSUS** | |
| **JOHN SCHWAB and UNDERWRITERS AT LLOYD'S, LONDON** | **NO. 09-1053-C-M2** |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Remand (R. Doc. 4) filed by plaintiffs, Performance Contractors, Inc., Brent J. Boe, and Donna J. Boe (collectively "plaintiffs"). Defendants, John Schwab ("Schwab") and Underwriters at Lloyd's, London ("Lloyd's")(collectively "defendants"), have not filed an opposition to plaintiffs' motion.[1]

## FACTS & PROCEDURAL BACKGROUND

Plaintiffs filed this suit in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, on or about November 19, 2009. In the petition, they allege that

---

[1] Local Rule 7.5M of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty-one (21) days after service of the motion. The rule specifically provides:

> LR7.5M     Response and Memorandum
> Each respondent opposing a motion shall file a response, including
> opposing affidavits, memorandum, and such supporting documents as
> are then available, within 21 days after service of the motion.
> Memoranda shall contain a concise statement of the reasons in
> opposition to the motion, and a citation of authorities upon which the
> respondent relies.  For good cause appearing therefor, a respondent may
> be required to file a response and supporting documents, including
> memoranda, within such shorter or longer period of time as the court may
> order, upon written ex parte motion served on all parties.

The present motion was filed on January 15, 2010, and the Court's electronic filing system indicates that notice of the filing of such motion was served upon defense counsel electronically on that same date at 6:02 p.m. CST. More than twenty-one (21) days have elapsed since the service of the motion, and defendants have failed to file any opposition.

1

Schwab, a former employee and financial advisor for the Stanford Financial Group ("Stanford Group"), is liable for soliciting them and other investors to purchase "investments" and fraudulent or otherwise worthless certificates of deposit ("CDs") from Stanford Group affiliate, Stanford International Bank, Ltd ("SIB").[2]  *See*, Petition, attached as Exhibit A to plaintiffs' motion.  Plaintiffs contend that the monies paid by Stanford Group to Schwab for the promotion and sale of CDs issued by Stanford were not in payment for legitimate services rendered by Schwab since the products sold to plaintiffs were not genuine investments but instead were part of a negligent investment strategy, which caused plaintiffs and other investors to lose significant savings.  *Id.*[3]

Plaintiffs assert that, as a result of such actions, Schwab is liable for making material misrepresentations regarding the liquidity, viability, stability, independence, and regulation of the Stanford CDs to induce investors to purchase them; failing to disclose inherent conflicts of interest within the Stanford structure; making material misrepresentations regarding the assets held by Stanford; making material misrepresentations concerning his own knowledge of the Stanford products marketed, including the CDs; breaching the trust

---

[2] The petition also names Lloyd's as a defendant based upon the assertion that it is liable *in solido* with Schwab as underwriter of the insurance policy covering Schwab's alleged negligent and intentional actions.

[3] Plaintiffs allege that Schwab either knew or should have known of the Stanford scheme and the significant financial harm being inflicted by that scheme upon the investors as a result of his actions, but he nevertheless continued to solicit investors, including the plaintiffs, and to encourage them to purchase "investments" and the worthless CDs from Stanford Group.  Plaintiffs contend that Stanford Group used "an elaborate and sophisticated incentive program to keep its financial advisors highly motivated to sell SIB CDs to bring in new money and to minimize redemptions of CDs previously sold."  According to plaintiffs, the program included high commission rates, bonuses, and forgivable loans, all closely tied to maintaining the Stanford Group's portfolio of CDs.  Plaintiffs allege that proceeds from the sales of CDs were transferred by Stanford Group to the advisors, including Schwab, in whole or in part, for the purpose of "soliciting new victims to invest in the CDs."  Plaintiffs assert that, because the scheme was fraudulent, the brokerage services performed by the advisors in exchange for those payments were neither legitimate, nor did they confer any benefit upon customers.  *Id.*

placed in him by the investors and others; breaching La. R.S. 51:1401, *et seq.* (The Louisiana Unfair Trade Practices Act); breaching La. R.S. 51:701, *et seq.* (The Louisiana Securities Act); breaching his fiduciary duties and duties of good faith and fair dealing; and for other negligent and/or intentional acts to be established at trial. *Id.* Plaintiffs did not expressly seek recovery under any federal law in the petition. Additionally, none of the Stanford Group entities are named as defendants in this suit.[4]

On December 16, 2009, Schwab removed the case to this Court on the basis that, in 2009, the Securities and Exchange Commission ("SEC") filed a complaint against the Stanford Group Companies in the U.S. District Court for the Northern District of Texas,[5] and that court entered an Order Appointing Receiver ("Receivership Order"), in which it assumed "exclusive jurisdiction" over the matter and took "possession of the assets . . . of whatever kind and description, wherever located" of the Stanford Group defendants.[6] *See,*

---

[4] Plaintiffs allege that, as a direct result of Schwab's negligent and/or intentional acts, they suffered "significant damages, including but not limited to, lost investment principal, interest, and lost investment opportunity." They specifically reserved their right in the petition to add additional claims and theories of recovery, including fraud and/or other intentional acts, should discovery support such claims.

[5] The SEC complaint alleges that the SIB, acting "through a network of [Stanford Group Company] financial advisors, has sold approximately $8 billion of self-styled 'certificates of deposit' by promising high return rates that exceed those available through true certificates of deposits offered by traditional banks." The complaint further states that "SIB and its advisors have misrepresented to CD purchasers that their deposits are safe because the bank: (i) re-invests client funds primarily in 'liquid' financial instruments . . .; (ii) monitors the portfolio through a team of 20-plus analysts; and (iii) is subject to yearly audits by Antiguan regulators." The SEC alleged that, through those acts, the Stanford Group Companies committed a number of federal securities violations, including violations of §10(b) of the Securities Exchange Act of 1934 and Rule 10-b5 promulgated thereunder, Section 17(a) of the Securities Act of 1933, Sections 206(1) and 206(2) of the Advisers Act, and Section 7(d) of the Investment Company Act.

[6] The Receivership Order enjoins creditors and others from filing suit, except in the Northern District of Texas ("the Receivership Court"), "against the Receiver, any of the defendants, the Receivership Estate, or any agent, officer, or employee related to the Receivership Estate, arising out of the subject matter of [the Receivership Litigation]." The order also restrains and enjoins creditors and others from taking possession, enforcing a lien, collecting or recovering on a claim, or setting off debts against the Receivership Estate Assets.

Schwab's Notice of Removal, R. Doc. 1. Schwab filed a copy of the Receivership Order (as well as other orders entered by the U.S. District Court for the Northern District of Texas) with this Court. In the notice of removal, Schwab contends that the Receivership Order establishes federal question jurisdiction in this case since the plaintiffs' claims herein are *similar* to those raised in the SEC complaint (*i.e.*, "the Receivership Litigation"). *Id.* Schwab asserts that this suit is therefore subject to the exclusive jurisdiction of the U.S. District Court for the Northern District of Texas.

Plaintiffs have now filed the present motion, seeking to have this case remanded to state court because the face of the petition does not raise an issue of federal law nor does the relief sought by the plaintiffs depend upon the resolution of a substantial question of federal law and because this Court has previously determined, in a similar action (*Starkey, et al v. Forbes, et al*, Civil Action No. 09-365-D-M3), that the issuance of a Receivership Order by another federal district court does not establish federal question jurisdiction. In addition to remand, plaintiffs also seek an award of the costs and expenses, including attorney's fees, that they incurred as a result of defendants' removal of this matter.

## **LAW & ANALYSIS**

**I.      Applicable legal standards:**

Federal courts are courts of limited jurisdiction, and the presumption for any case that has been removed to federal court is that the case lies outside of federal jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The burden of establishing that federal jurisdiction exists is upon the party seeking the federal forum- here, Schwab. *Id.*

A civil action may only be removed to federal court if it is founded upon a claim arising under the U.S. Constitution or the laws of the United States.  28 U.S.C. §1441(b); 28 U.S.C. §1331.  A case will only "arise" under federal law when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983); *See also, Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001).  A "substantial federal question" exists "where the vindication of a right under state law necessarily turns on some construction of federal law."  *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

In determining whether a "substantial federal question" exists, the court must consider whether "the state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314, 125 S.Ct. 2362, 162 L.Ed.2d 257 (2005).  It is not enough that a court may have to interpret federal laws or regulations, and a federal court will not have jurisdiction if federal law or preemption is merely a defense to state claims, even if the defense of federal law or preemption is the only issue at stake.  *Franchise Tax Bd.*, at 12.

The "well-pleaded complaint" rule "makes the plaintiff the master of the claim," and "he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).  Thus, even

5

where both federal and state remedies are available on a given set of facts, federal question jurisdiction does not exist if a plaintiff elects, in the state court petition, to proceed exclusively under state law. *Avitts v. Amoco Production Co.*, 53 F.3d 690, 693 (5th Cir. 1995). Furthermore, a reference in a petition regarding a violation of unspecified federal laws does not establish a federal claim. *Id.*

**II.    Analysis:**

The undersigned finds that the ruling entered by this Court in the highly similar case, *Starkey, et al v. Forbes, et al*, Civil Action No. 09-365-D-M3, is dispositive of the present motion to remand. In *Starkey*, as in the present matter, the plaintiffs were various individuals who invested over time with the Stanford Group entities. *See*, Magistrate Judge's Report and Order adopting Magistrate Judge's Report, Civil Action No. 09-365-D-M3, Exhibits B and C to plaintiffs' motion. They alleged that they purchased and/or renewed CDs from SIB based upon investment advice from the defendants, who served as employees and investment advisors of and for the Stanford Group Companies. *Id.* The plaintiffs alleged that, despite numerous "material representations" and assurances by the defendants that the SIB CDs were safe, liquid, and well-managed, the SIB CDs that they purchased/renewed were actually highly speculative debt instruments similar to junk bonds, which caused them to lose significant amounts of money. *Id.* Similar to the present matter, the *Starkey* plaintiffs alleged that they suffered damages as a result of the defendant advisors' negligence, breach of contract, negligent misrepresentation, breach of fiduciary duty, unfair trade practices, violations of the Louisiana Securities Act, and negligent supervision. *Id.* The defendant advisors removed the *Starkey* case to this Court, asserting the same basis for federal question jurisdiction as is asserted herein (*i.e.*, that such

6

jurisdiction exists by virtue of the Receivership Order).  The defendant advisors also filed a notice of stay, which notified this Court of the order appointing the Receiver in the Receivership Litigation and enjoining litigation outside of the Northern District of Texas, and they filed a motion to transfer the case to the Northern District of Texas on the basis that such court had "exclusive jurisdiction" over the case.  *Id.*

This Court, in *Starkey*, concluded that the advisor defendants failed to carry their burden of proving that federal question jurisdiction existed by showing that the plaintiffs' petition established either that federal law creates the cause of action in that suit or that the plaintiffs' right to relief necessarily depended upon a substantial issue of federal law.  *Id.*  The Court noted that the plaintiffs had not cited to a single federal law or regulation in the petition and that the petition only raised state law claims of negligence, breach of contract, negligent representation, breach of fiduciary duty, unfair trade practices, violations of the Louisiana Securities Act, and negligent supervision.  *Id.*  The Court therefore found that there were no federal issues apparent from the face of the plaintiffs' petition.  *Id.*

Although the defendants in *Starkey* argued that the plaintiffs' claims for negligent representation raised federal issues in that the plaintiffs would have to prove that the defendants violated federal securities laws in order to prove that claim, the Court disagreed. *Id.*  The Court noted that plaintiffs' negligent representation allegations were that the defendants made certain representations concerning the formation and operation of SIB and the marketing of SIB CDs based upon information obtained from their legal counsel, and the issues of whether or not the defendants actually received specific information from their legal counsel or whether the defendants made representations without performing the necessary due diligence were not issues of federal law and did not turn on an interpretation

7

of a federal law.  *Id.*  The Court, in *Starkey*, further found that a federal issue was not created by the plaintiffs' vague reference to the "laws of the United States" in its allegations or the mere fact that the Court may have to refer to federal law in deciding the plaintiffs' claims or in determining the standard of conduct.  In summary, the Court concluded that plaintiffs' claim of negligent representation turned on the representations made by the defendants, and the federal law issues that might arise in analyzing that claim were not sufficiently substantial to confer federal question jurisdiction.  *Id.*

Finally, this Court, in *Starkey*, addressed the defendants' argument that the plaintiffs' prosecution of this suit is in direct violation of the Receivership Order and therefore requires this Court to resolve a substantial issue of federal law, *i.e.*, whether the Receivership Court has the authority to enjoin this action.  *Id.*  The Court noted that the Receivership Court's "authority" was not really what was at issue in *Starkey*, however.  Instead, the Court found the real issue between the parties to be what constituted "the Receivership Estate;" that is, whether or not the assets of the defendants, which were sought to satisfy the plaintiffs' claims, were part of the "Receivership Estate" such that the *Starkey* suit was precluded by the Receivership Order.[7]  *Id.*  The defendants in *Starkey* contended that the plaintiffs' claims against the advisors/brokers' assets and their insurers sought assets of the "Receivership Estate."  The Court, however, concluded, in *Starkey*, that it was not for this Court or any state court to decide what constitutes an asset of the "Receivership Estate" because that decision is to be made by the Receivership Court itself, and such decision

---

[7] The Receivership Order prohibits suit against "the Receivership Estate, any agent, officer or employee related to the Receivership Estate, arising from the subject matter of [the Receivership Litigation]" in any jurisdiction other than the Northern District of Texas, unless permission is granted by the Receivership Court.

would be binding on the parties and on state and federal courts alike. *Id.* The Court found that allowing random state and federal courts to make their own determinations as to what constitutes an asset of the "Receivership Estate" would diminish the Receiver's and the Receivership Court's power to protect and marshal the assets. Furthermore, any stay of the suit that might be imposed by the Receivership Court would be equally applicable whether the suit was pending in state or federal court. As such, the Court, in *Starkey*, determined that the defendants had failed to prove that a federal question existed and remanded the case to state court. *Id.*[8]

As in *Starkey*, the plaintiffs in the present matter did not expressly assert any federal claims in the petition. Furthermore, all of the claims asserted appear to arise under state law. Additionally, the Court does not find that the plaintiffs will be required to prove that the defendants violated federal securities laws in order to prove their claims. Like *Starkey*, the plaintiffs' negligent misrepresentation claims deal with representations made by a financial advisor concerning the structure and operation of the Stanford Group Companies and regarding the marketing of and investment strategy relative to SIB CDs.[9] In sum, plaintiffs

---

[8] In *Starkey*, the Court also noted that, unlike cases involving the FDIC or cases that fall within the district court's bankruptcy jurisdiction, which have specific rules authorizing removal of cases to federal court (*See*, 28 U.S.C. §1452; 12 U.S.C. §1819(b)(2)(B)), cases involving claims brought under the Securities Act of 1933, like the Receivership Litigation, do not have any direct statutory authority authorizing removal.

[9] Specifically, plaintiffs contend that Schwab made material misrepresentations regarding the liquidity, viability, stability, independence, and regulation of the Stanford CDs to induce investors to purchase them; failed to disclose inherent conflicts of interest within Stanford structure; made material misrepresentations regarding his own knowledge of the Stanford products he marketed, including the CDs. *See*, Petition, ¶15.

According to the petition, advisors, such as Schwab, "repeatedly touted the CDs' safety and security and SIB's consistent, double-digit returns on its investment portfolio." *See*, Petition, ¶8. Through its brochure, SIB and its advisors allegedly informed investors, under the heading "Depositor Security," that SIB investment philosophy is "anchored in time-proven conservative criteria, promoting stability in [the bank's] certificate of deposits." According to plaintiffs, SIB emphasized that its "prudent approach and

allege that, contrary to Schwab's representations regarding the liquidity of SIB's portfolios, SIB did not invest in a "well-diversified portfolio of highly marketable securities," but instead, "significant portions of the bank's portfolio were misappropriated by Stanford and/or Allen Stanford and used by them to acquire private equity investments and real estate." The plaintiffs did not specifically allege in the petition that such conduct violated federal securities laws, and they do not have to prove that fact in order to demonstrate that Schwab misrepresented to them how their funds were being invested. As the Court concluded in *Starkey*, the plaintiffs' claim of negligent misrepresentation herein turns on the representations made by Schwab, and the fact that federal law issues might arise in the context of analyzing that claim does not establish federal question jurisdiction. *See, Finance and Trading, Ltd. v. Rhodia*, 2004 WL 2754862 (S.D.N.Y. 2004), quoting *West 14th Street Comm. Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188 (2nd Cir. 1987)("the borrowing of . . . federal law as a standard of conduct in a state created action is not sufficiently substantial to confer federal question jurisdiction").[10]

Furthermore, the undersigned agrees with the reasoning of Magistrate Judge Dalby and District Judge Brady in *Starkey* that the Receivership Order does not establish federal question jurisdiction herein. The issue of whether plaintiffs' causes of action and the assets that plaintiffs seek in this case are subject to the Receivership Order is an issue solely for

---

methodology translate[d] into deposit security for [its] customers," and advisors stressed the importance of investing in "marketable" securities, stating that "maintaining the highest degree of liquidity" was a "protective factor for [SIB's} depositors." *Id.*, ¶¶9-10.

[10] Since plaintiffs' claim of negligent misrepresentation makes no reference to federal securities law, it is distinguishable from *Gobble v. Hellman*, 2002 WL 34430286 (N.D.Ohio 2002), wherein the court held that removal was based upon a substantial issue of federal law because of the plaintiffs' "direct references to federal securities law and Defendants' alleged violations of those laws."

the Receivership Court to decide and is not an issue of federal law. Furthermore, the Receivership Court's decision as to whether to stay proceedings in other courts relating to what is determined to be "Receivership Estate" assets can be applied as well by the state court from which this case was removed as by this Court. Accordingly, as in *Starkey*, plaintiffs' motion to remand should be granted.[11] The undersigned, however, does not find that an award of attorney's fees and costs to the plaintiffs is warranted because Schwab had an objectively reasonable argument that removal was proper based upon the Receivership Order.[12]

---

[11] Although plaintiffs rely upon *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S.Ct. 921 (1998) in support of their argument that the Receivership Order does not establish federal question jurisdiction, the Court finds that such case is not applicable herein. In *Rivet*, the U.S. Supreme Court held that claim preclusion by reason of a prior federal judgment is a defensive plea, which does not provide a basis for removal jurisdiction. That holding is inapplicable herein because "the prior federal judgment" element of claim preclusion requires a final judgment on the merits. *Thanedar v. Time Warner, Inc.*, 2009 WL 3614542 (5th Cir. 2009). The Receivership Order at issue in this case is not a final judgment on the merits by the U.S. District Court for the Northern District of Texas.

[12] The Fifth Circuit has held that "[f]ees should only be awarded if the removing defendant lacked 'objectively reasonable grounds to believe the removal was legally proper'." *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004)(quoting *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). A district court's discretion in ordering payment of costs and fees is not restricted to cases in which there is a finding of bad faith, negligent or frivolous removal. *Miranti v. Lee*, 3 F.3d 925 (5th Cir. 1993).

11

## **RECOMMENDATION**

For the above reasons, it is recommended that the Motion to Remand (R. Doc. 4) filed by plaintiffs, Performance Contractors, Inc., Brent J. Boe, and Donna J. Boe, should be **GRANTED** and that this matter should be **REMANDED** to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, for further proceedings.

Signed in chambers in Baton Rouge, Louisiana, February 10, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**